UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Ivan Perez,

          Plaintiff,

  v.

Commissioner of Social Security,

          Defendant.

**Decision and Order**

18-CV-1395 HBS
(Consent)

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 5, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 7, 8.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that he was not entitled to Supplemental Security Income under Title XVI of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.* "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous

2

work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

    (1) whether the plaintiff is currently working;

    (2) whether the plaintiff suffers from a severe impairment;

    (3) whether the impairment is listed in Appendix 1 of the relevant regulations;

    (4) whether the impairment prevents the plaintiff from continuing past relevant work; and

    (5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry, supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the

3

physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Plaintiff challenges the ALJ's decision to craft an RFC without an explicit medical source statement that received significant weight. The ALJ found that plaintiff had the severe impairments of left shoulder dysfunction, bipolar disorder, and polysubstance use. [17.] After reviewing the record, the ALJ crafted the following RFC, reprinted here in its entirety:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except with the following additional limitations: The claimant occasionally can perform overhead reaching with the non-dominant, left upper extremity. The claimant can perform work involving simple, routine tasks. He can have frequent interaction with supervisors as part of a job, occasional interaction with co-workers, and no interaction with the public.

[19.] Plaintiff argues that the level of detail in the RFC went beyond the information available on the record and would have required an opinion from a treating source or from a consultative examiner:

> The only opinion on the record was that of the M. Totin, MD on April 27, 2015, which indicated that the Plaintiff had severe affective and anxiety disorders, however there was insufficient evidence at the time of the opinion to determine the level of disability. T.146-48. The ALJ granted no weight to this opinion, finding it inconsistent. T. 19. The ALJ then went on to determine the Plaintiff's residual functional capacity using the "mild objective imaging reports, somewhat inconsistent clinical signs and statements from the claimant, cessation of treatment for physical limitations within the last couple of years, scarce mental health treatment with reports of medication noncompliance, urine drug screens and alcohol intake, and the claimant's range of activities of daily living". T. 19. The ALJ came to residual functional capacity that the Plaintiff could perform light work involving simple tasks, with frequent interaction with supervisors, occasional interaction with co-workers, and no interaction with the public. T. 15. However, as this was unsupported by medical opinion evidence, the ALJ erred when coming to this decision. *Wilson*, 2015 WL1003933 at *20.
>
> The ALJ does not explain why the Plaintiff can have no interaction with the public, occasional interaction with co-workers, and frequent interaction with

supervisors. T. 15-19. Plaintiff reported being frustrated very easily with other people. T. 126. It was noted that he had been kicked out of treatment for inappropriate behavior once. T. 340-42. The ALJ did find that the Plaintiff had moderate limitations in the domain of social functioning. T. 14. However, A limitation to interacting with the public is not equivalent to a limitation to interacting with coworkers or supervisors. *Smith v. Colvin*, 2017 WL 489701 at *3 (W.D.N.Y. 2017), citing *Nickens v. Colvin*, 2014 WL 4792197 at *2 (W.D.Pa. 2014) ("The public, supervisors, and co-workers are distinct groups ...Thus, limitations on two of these types of interactions in the RFC does not account for limitations on the third."). A vocational expert's testimony based on hypotheticals "infected" by the omission of social groups the Plaintiff may be limited in dealing with warrants remand. *Nickens*, 2014 WL 4792197 at *2. An RFC that does not limit Plaintiff to simple work or routine tasks, but rather occasionally carrying out complex and detailed tasks, or occasional interaction with the public but frequent interaction with coworkers and supervisors does not account for their limitations. *Herb v. Comm'r of Soc Sec*, 336 F.Supp.3d 441, 447 (W.D.N.Y. 2019).

(Dkt. No. 7-1 at 11–13; *see also* Dkt. No. 9 at 2.) The Commissioner responds that plaintiff gave inconsistent information to his treatment providers over the years and that he has not met his burden of showing what portions of the record weigh against the RFC:

> Plaintiff points to no evidence that establishes he could not perform the range of light, unskilled, low-contact work outlined in the ALJ's RFC finding. Pl. Mem. 11-12. In fact, Plaintiff barely points to any record evidence at all, and the evidence he relies upon was fully considered by the ALJ in rendering the RFC finding. As Plaintiff notes, and as the ALJ considered, Plaintiff sought hospital treatment in March 2014 for a left shoulder injury. Tr. 16, *referring to* Tr. 289-93, 303-06. At the initial visit, Plaintiff reported that he injured his left shoulder moving furniture at home. Tr. 16, *referring to* Tr. 289-93. The examination was normal but for decreased and painful range of motion. Tr. 16, referring to Tr. 304. X-ray evidence was mild, and Plaintiff was accordingly prescribed only ibuprofen to treat pain. Tr. 16 *referring to* Tr. 299, 305.
>
> As the ALJ also considered, which Plaintiff overlooks, in his subsequent course of care, Plaintiff introduced significant inconsistencies and his medical records demonstrated that Plaintiff would be capable of a range of light work. Tr. 17. For instance, when Plaintiff sought hospital care for left shoulder pain in April 2014, this time he attributed his injury to falling down stairs at his home, which he asserted caused him to pull and injure his arm. Tr. 17, *referring to* Tr. 568; *see also* Tr. 565. During a third hospital visit to address left shoulder pain in June 2014, Plaintiff attributed his pain to a motor vehicle accident, but did not report any earlier injuries related to falling down stairs or moving furniture. Tr. 17, *referring to* Tr. 274-84.
>
> Regardless of the origin of Plaintiff's left shoulder pain, the record simply

5

does not provide any evidence that this impairment precluded Plaintiff from performing a range of light work with reaching limitations. As the ALJ considered, Plaintiff testified that he had limitations with lifting very heavy objects and when reaching overheard, though he could reach in front of his body without difficulty, consistent with the RFC finding. Tr. 16, *referring to* Tr. 129-30. In fact, the record is in keeping with this testimony. For instance, after the three above-discussed hospital visits, Plaintiff was advised to take ibuprofen or Motrin for pain, and to attend physical therapy. Tr. 16-17, *referring to* Tr. 279, 286, 299, 571. In July 2014, after inconsistent attendance at physical therapy for three months (Tr. 17, *referring to* Tr. 568-89), Plaintiff reported that his pain was only exacerbated by lifting or reaching, and physical therapy records showed some improvement in shoulder function. Tr. 17, *referring to* Tr. 566-67. The record shows Plaintiff did not receive ongoing care for left shoulder pain, with the exception of an EMG study in February 2015, Tr. 17, *referring to* Tr. 272-72, 366; *see* Tr. 17, *referring to* Tr. 129-30 (Plaintiff's testimony that he was no longer receiving any treatment for left shoulder pain). Despite a lack of treatment, Plaintiff did not suffer any particular exacerbation of pain nor did he seek additional hospital treatment, providing ample additional support for the RFC finding. *See Johnson v. Colvin*, 669 F. App'x 44 (2d Cir. September 29, 2016) (The Court found that substantial evidence supported the ALJ's RFC for light work, despite a lack of supportive functional assessment from a physician. This included Johnson's testimony regarding his abilities and activities, as well as a note from his doctor indicating his once severe limitations had improved and that he would benefit from exercise.); *see also Reynolds v. Colvin*, 270 F.App'x 45, 46 (2d Cir. 2014) ("A lack of supporting evidence on a matter where the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits.").

(Dkt. No. 8 at 13–15.)

The Commissioner has the better argument. "If all of the evidence we receive, including all medical opinion(s), is consistent and there is sufficient evidence for us to determine whether you are disabled, we will make our determination or decision based on that evidence." 20 C.F.R. § 416.920b(a). "We will assess your residual functional capacity based on all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). Here, plaintiff had normal range of motion as of March 2, 2015 [282], though a radiology report from March 15, 2014 suggested a limited range of motion in the left shoulder. [303.] On August 9, 2013, plaintiff was diagnosed with a mood disorder after reporting paranoid thoughts toward another physician and after reporting a "moody outburst." [342.] On February 4, 2017, plaintiff had a domestic violence incident while intoxicated;

6

the incident included plaintiff locking himself in a room and threatening to kill his girlfriend and stepchildren. [374–75.] Plaintiff blamed his alcohol use; he was diagnosed with polysubstance use and post-traumatic stress disorder, though he did show fair insight and judgment in a mental status examination. [391.] An anger management session on April 9, 2014 ended prematurely when plaintiff decided that he did not want to stay; he stayed long enough to express agitation and sadness about his current financial status. [569.] An examination on August 1, 2014 showed persistent left shoulder pain with decreased strength and range of motion. [571.] The Commissioner has cited other portions of the record as well, and the clinical notes as a whole show a consistent profile: left shoulder problems that might have improved over time but that gave plaintiff diminished strength and range of motion for at least a while; and significant issues with mood, anxiety, and depression that seemed to be somewhat under control during the better portions of plaintiff's medication and polysubstance history. *Cf. Gregory v. Comm'r*, No. 1:14-CV-1012, 2016 WL 900647, at *6 (N.D.N.Y. Mar. 9, 2016) (RFC limiting interaction with the public affirmed, where mental health treatment notes and consultative examiner appointed only to "issues concerning generalized stress," and ALJ relied in part on claimant's own testimony); *see also* Titles II & XVI: Residual Functional Capacity for Mental Impairments, SSR 85-16, 1985 WL 56855, at *3 (Jan. 1, 1985) (suggesting consultative examination as an option "when treating medical sources cannot provide essential information"). This pattern is consistent with statements from plaintiff such as, "I just get frustrated very easily with people. And I just don't like being around a lot of people." [130.] *Cf. Tankisi v. Comm'r*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) ("The medical record in this case is quite extensive. Indeed, although it does not contain formal opinions on Tankisi's RFC from her treating physicians, it does include an assessment of Tankisi's limitations from a treating physician, Dr. Gerwig. Given the specific facts of this case, including a voluminous medical record assembled by the claimant's

7

counsel that was adequate to permit an informed finding by the ALJ, we hold that it would be inappropriate to remand solely on the ground that the ALJ failed to request medical opinions in assessing residual functional capacity.") (citations omitted).  Additionally, although the ALJ did not invoke 20 C.F.R. § 416.935(b) explicitly, he did cite portions of the record indicating that plaintiff felt independent with activities of daily living and would have better functioning without medication noncompliance and without polysubstance abuse.  *Cf. Halmond v. Comm'r*, No. 18-CV-6337 HBS, 2019 WL 3450972, at *4 (W.D.N.Y. July 31, 2019) ("The Commissioner has pointed to additional parts of the record indicating the same pattern as what the Court has cited above: a long history of dependency interrupted with some level of functioning and a desire to work during periods of sobriety.  These circumstances suffice to persuade a reasonable mind that plaintiff's overall functioning and RFC would be better, as the ALJ has described, in the absence of substance abuse.").  The record here required no interpretation at the level that caused concern in *Brown v. Apfel*, 174 F.3d 59 (2d Cir. 1999).  *See id.* at 63 (ALJ decided on his own that plaintiff's "seizures were caused by a failure to take his medication" when no treatment provider said so).  Plaintiff's clinical profile is consistent with the regulatory description of light work: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b).  Substantial evidence thus supported the ALJ's RFC, and more detailed medical source statements were not necessary.

## III. CONCLUSION

The Commissioner's final determination was supported by substantial evidence. For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 8) and denies plaintiff's cross-motion (Dkt. No. 7).

The Clerk of the Court is directed to close the case.

SO ORDERED.

\_\_/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: March 13, 2020